### HOLMES v. MARTIN.

MORTGAGES—VALIDITY—FRAUD—MENTAL INCAPACITY—NOTICE TO MORTGAGEE.

> Where a mortgagee knew, when he took his mortgage, that the mortgagor was of feeble intellect, and that he gave the mortgage, which was upon his homestead, to obtain a loan for a third person, upon the latter's representation that a chattel mortgage, purporting to cover commercial paper thereafter to be acquired, given back to the mortgagor, would afford him ample protection, he is not in position to defend his claim as *bona fide*, even if he had no intention of engaging in any active fraud.

Appeal from Kent; Adsit, J. Submitted January 5, 1900. Decided March 6, 1900.

Bill by Glenn W. Holmes, guardian of Frederick Miller, an insane person, against Joseph H. Martin, to set aside a mortgage. From a decree dismissing the bill, complainant appeals. Reversed.

*Holmes & Holmes*, for complainant.

*Wolcott & Perkins*, for defendant.

MONTGOMERY, C. J. The bill in this case was filed originally by Frederick Miller. Since the case was submitted to the court below, a guardian has been appointed. The purpose of the suit is to set aside a mortgage of $250, executed by the complainant to defendant in July, 1894, covering complainant's homestead in the township of Walker, Kent county, which consisted of about two acres of land, with a small house on it; the premises being worth from $800 to $1,000. The bill, as amended, avers, in substance, that the mortgage in question was given without any consideration whatever passing to complainant, and wholly for the accommodation of one Klugh; who committed an outrageous fraud on complainant; that Klugh gave to complainant the pretended security of a chattel mortgage, which was insufficient—*First*, because it in terms professed to provide security on commercial paper not then in existence, but to be thereafter acquired by Klugh; and, *second*, because the tangible property mortgaged was not owned by Klugh. The bill avers that complainant was at the time mentally incompetent to execute the mortgage, which was well known to defendant's agent, John B. Martin, who transacted the business for defendant.

The testimony shows that Klugh was slightly acquainted with complainant, and had had some previous talk with him about giving a mortgage on his place to enable him (Klugh) to raise some money; that Klugh went to John B. Martin, and stated that he had a friend who would give a mortgage to secure a loan, and furnished him an abstract; that Klugh had John B. Martin draw up a

chattel mortgage purporting to cover one chestnut mare, one top buggy, and "certain commercial paper to an amount of $400 just as soon as received in payment of certain work I am doing," running to complainant, and purporting to secure the payment of a note due in one year. Klugh and Martin visited complainant. Complainant testifies that he then told Martin that he would not give a mortgage unless he was sure it was going to be paid; that he would not take Klugh's word for it; and that Martin replied that, if Klugh did not pay it, he would see that it was going to be paid,— evidently meaning, as complainant understood, that Martin would, if necessary, proceed against Klugh. Mr. Martin testifies that complainant did not express any unwillingness to rely on Klugh. He testifies on cross-examination that he made no inquiry of Klugh about the contracts that Klugh claimed to have, out of which he expected to realize the commercial paper, but that he understood from Miller's looks that he would understand that the chattel mortgage gave a valid lien on the commercial paper. The witness also testified that he did not assure Miller that he would look to Klugh, but that it was talked in Miller's presence that Klugh was to attend to the payments, and make the payments to him.

The evidence is ample to show that complainant was weak-minded, and incompetent to understand the nature of the transaction. The only doubtful question is whether defendant had sufficient notice of this to put a prudent man on inquiry. We think that, on the whole record, there was sufficient to suggest caution. The defendant's agent had for eight years been engaged in the business of loaning money and taking securities. While he was not a lawyer, he must have known that the so-called security on the commercial paper to be thereafter acquired was in fact no security. He also knew that the chattel mortgage, without this, was wholly inadequate. He knew that complainant was so ignorant as to believe that he was obtaining valid security on such paper. He knew that the transaction was in no way beneficial to complainant, and

we are satisfied that he must have known that complainant expected to be protected by the security of the chattel mortgage. Nor could the mental weakness of complainant, which so impressed itself on others, have wholly escaped the notice of Mr. Martin. While we attribute to Mr. Martin no purpose of engaging in any active fraud, we think that he exhibited an indifference to the consequences of the wrongful acts of Klugh which should debar him from the claim of *bona fides*.

The decree will be reversed, and a decree entered in accordance with the prayer of complainant's bill.

The other Justices concurred.